JUSTICE NELSON
delivered the Opinion of the Court.
Duncan Peder McKenzie, appeals from an order of the Eighth Judicial District Court, Cascade County, denying his request to consider his objections to the resetting of his execution date and issuing a death warrant. This Court granted the State’s motion to dismiss McKenzie’s appeal, in an order dated April 11, 1995. Pursuant to the April 11, 1995 order, this opinion follows.
The issues before this Court are:
1. Whether McKenzie has a right to appeal the District Court’s resetting of the execution date?
*34 2. Whether the District Court has jurisdiction to set an execution date after an earlier execution date has expired?
3. Whether the District Court had jurisdiction to hear McKenzie’s substantive arguments regarding the resetting of the execution date?
PROCEDURAL BACKGROUND
In January, 1975, Duncan McKenzie was convicted of deliberate homicide and aggravated kidnapping in the Eighth Judicial District Court, Cascade County. McKenzie was sentenced to death for these convictions on March 3, 1975. The facts underlying McKenzie’s conviction and sentencing are fully set forth in State v. McKenzie (1976), 171 Mont. 278, 577 P.2d 1023, and will not be repeated here. McKenzie has challenged his conviction and sentence in numerous state and federal proceedings, none of which has been ultimately successful on the merits. McKenzie’s death sentence has been stayed at least eight times since its imposition. The most recent stay of execution entered in November of 1988, was dissolved by the United States District Court for the District of Montana on February 23,1995. The following provides a brief review of the procedural history of this case.
In McKenzie’s first state proceeding, this Court affirmed McKenzie’s direct appeal of his conviction. State v. McKenzie (1976), 171 Mont. 278, 577 P.2d 1023. In 1980, after two remands by the United States Supreme Court for reconsideration by this Court, we affirmed McKenzie’s conviction. State v. McKenzie (1980), 186 Mont. 481, 608 P.2d 428.
On January 5, 1981, McKenzie filed a petition for post- conviction relief in state district court. The District Court denied the petition, and this Court affirmed that court’s ruling. McKenzie v. Osborne (1981), 195 Mont. 26, 640 P.2d 368. McKenzie then filed a petition for writ of habeas corpus in federal district court, which was resolved against him seven years later. McKenzie v. Risley (9th Cir. 1988), 842 F.2d 1525, cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). McKenzie petitioned the United States Supreme Court for a writ of certiorari, which the Court denied on October 11, 1988. McKenzie v. McCormick (1988), 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239.
McKenzie then filed his second petition for writ of habeas corpus with this Court. We denied that petition on April 16, 1985, in an unpublished order. On June 27, 1985, McKenzie filed his second habeas petition in federal court which the federal district court *35 denied. The Ninth Circuit affirmed the federal district court’s denial, McKenzie v. McCormick (9th Cir. 1994), 27 F.3d 1415, and also denied McKenzie’s petition for rehearing en banc. On January 17,1995, the United States Supreme Court denied McKenzie’s petition for writ of certiorari. The Court also denied McKenzie’s request for a rehearing of the denial of certiorari.
On February 23, 1995, the United States District Court for the District of Montana ordered that the stay of execution granted in 1988, during the pendency of McKenzie’s second petition for writ of habeas corpus, be vacated and dissolved. There being no stays of execution in effect, the State moved the Eighth Judicial District Court, Cascade County, for a hearing to reset the execution date.
Prior to the hearing on this matter, McKenzie filed “Defendant’s Objections to Request for Execution Date” and supporting memorandum. McKenzie raised several arguments in this document including the argument that the court did not have jurisdiction, and that the hearing to reset the execution date was a hearing to “reimpose the death sentence.” The District Court held ahearing on March 27,1995, and overruled all of the objections McKenzie raised in his “Memorandum Supporting Objections to Execution Setting.”
The District Court found that its act in resetting the execution date was merely a procedural and ministerial act, and proceeded with the hearing to set the execution date. The court set the execution date for May 10, 1995, and issued a death warrant.
McKenzie filed a notice of appeal seeking to invoke this Court’s appellate jurisdiction over the District Court’s rulings. The State moved to dismiss the appeal on the grounds that McKenzie had no right of appeal because there is no appealable order which would give rise to this Court’s appellate jurisdiction. We ordered that the matter be fully briefed and, after careful consideration of the parties’ arguments, issued an order granting the State’s motion to dismiss on April 11, 1995.
DISCUSSION
1. RIGHT OF APPEAL
The State contends that McKenzie has no right of appeal because under Montana law, “[a]n appeal may be taken by the defendant only from a final judgment of conviction and orders after judgment which affect the substantial rights of the defendant.” Section 46-20-104(1), MCA. The State argues that the order resetting the execution date did not affect McKenzie’s substantial rights; rather, *36 the court merely executed the March 3, 1975 judgment. The State also maintains that the order resetting the execution date is not a judgment or sentence. We agree.
Courts have long recognized that setting an execution date is a ministerial and not a judicial act. See, State v. Joubert (1994), 246 Neb. 287, 518 N.W.2d 887, 895; Pate v. State (Okla.Crim. 1964), 393 P.2d 247; State v. Miller (1950), 169 Kan. 1, 217 P.2d 287; Rose v. Commonwealth (1949), 189 Va. 771, 55 S.E.2d 33. As stated by one court:
The refixing or resetting of the time for execution, where for any reason the judgment of death has not been executed, is a merely ministerial act, which, at common law, as we have seen, generally devolved upon the sheriff, but which under our statute devolves upon the court in which the conviction was had.
Pate, 393 P.2d at 249.
In resetting the execution date, the District Court was merely performing a ministerial function, i.e., carrying out the March 3,1975 judgment which sentenced McKenzie to death. McKenzie’s substantial rights were not implicated by this proceeding, accordingly, the District Court’s order resetting the execution date is not an appeal-able order.
We also conclude that the District Court’s order resetting the execution date cannot be defined as an appealable judgment. Under Montana law, a judgment is defined as “an adjudication by a court that the defendant is guilty or not guilty, and if the adjudication is that the defendant is guilty, it includes the sentence pronounced by the court.” Section 46-1-202(10), MCA. In addition, other courts have recognized that: “the order fixing or resetting the date of execution under the original judgment is not a new judgment, and from such order no appeal lies.” Pate, 393 P.2d at 250.
Here, the District Court did not “resentence” McKenzie nor did it “reimpose” the death penalty. It merely executed the judgment before it. McKenzie was “sentenced” and the death penalty was “imposed” on March 3,1975; that sentence has never been vacated by any court.
Finally, we note that the District Court would not have jurisdiction to vacate the original judgment sentencing McKenzie to death, and grant his request for a sentence of life imprisonment, because, once a valid judgment and sentence has been signed, the court imposing the sentence lacks jurisdiction to vacate or modify it except as provided by law. State v. Hanners (1992), 254 Mont. 524, 526, 839 P.2d 1267, 1268. We conclude that there is no provision in *37 the law which would allow the District Court to amend, at the hearing resetting the execution date, the original judgment of 1975 sentencing McKenzie to death.
2. JURISDICTIONAL ARGUMENT
McKenzie argues that the District Court did not have jurisdiction to reset the execution date because the law in effect at the time he was sentenced had no provision for the resetting of the execution after the statutory time for execution had passed. The law in effect at the time McKenzie was originally sentenced provided that: “[i]n pronouncing the sentence of death, the court shall set the date of execution which must not be less than thirty (30) days nor more than sixty (60) days from the date the sentence is pronounced.” Section 95-2303(b), RCM (1947), as amended (later recodified as § 46-19-103, MCA). Therefore, according to McKenzie, at the time he was sentenced, an execution had to be conducted within the sixty-day time frame, and the court had no power to reset the execution date if the sixty days elapsed.
However, in 1981, § 46-19-103(1), MCA, was amended to provide that a court shall set a new execution date upon dissolution of a stay of execution. According to § 46-19-103(1), MCA, the District Court has a mandatory duty to set a new execution date, and has no discretion to do otherwise.
Because we have previously concluded that the order resetting the execution date was merely a procedural or ministerial act and, thus, McKenzie’s substantial rights were not thereby affected, the controlling law is that law in effect at the time of the court’s resetting the execution date. See, State v. Coleman (1979), 185 Mont. 299, 605 P.2d 1000. Therefore the District Court acted correctly in setting the execution date pursuant to § 46-19-103(1), MCA.
In addition, we find no merit to McKenzie’s argument that once the initial execution date has passed, the District Court has no authority to reset the date. Other courts have recognized that “the failure to execute a death warrant on the original date fixed does not result in the discharge of a prisoner sentenced to die, but requires the court to fix a new date for the execution.” Joubert, 518 N.W.2d at 891.
As stated by the Kansas Supreme Court in Miller, 217 P.2d at 290, “the authorities uniformly hold that failure to execute a death warrant on the date fixed does not result in immunity to or discharge of a person sentenced to die, but requires the fixing of a new date for his execution.”
*38 McKenzie also claims that the District Court did not have jurisdiction to reset the execution date pursuant to § 3-l-804(1)(b), MCA, which provides in part: “[t]he first district judge who has been substituted or disqualified for cause shall have the duty of calling in all subsequent district judges.” McKenzie argues that Judge McKittrick did not have jurisdiction because the original presiding judge or his successor, did not enter an order conferring jurisdiction on Judge McKittrick.
McKenzie also points to this Court’s order of March 14, 1976, as authority for the proposition that McKittrick lacked jurisdiction to reset the execution date. McKenzie’s argument is based on the following procedural background.
This case arose in Pondera County, in the Ninth Judicial District before Judge R.D. McPhillips. McKenzie subsequently disqualified McPhillips by substitution. McPhillips called in Judge Robert J. Nelson of the Eighth Judicial District Court to assume jurisdiction of the case, and Judge Nelson moved the cause to Cascade County for the purposes of trial. Thereafter McKenzie was found guilty of deliberate homicide and aggravated kidnapping, and Judge Nelson imposed the death penalty. The execution date was set for April 30,1975, however it was stayed pending appeal to this Court.
After remittitur, Judge Nelson’s term had expired and Judge William H. Coder succeeded Judge Nelson as a judge in the Eighth Judicial District Court. Coder issued an order resetting the execution date on the basis of the sentence previously pronounced by Judge Nelson.
In our March 14, 1976 order we concluded that Judge Coder did not have jurisdiction to reset the execution date. We held that before a district court judge could reset the execution date, the cause had to be returned to the original presiding judge in Pondera County. That judge was required to call in another district judge to continue with jurisdiction of the case.
At the time we issued that order, however, § 46-19-103(1), MCA (1993), was not in effect. The relevant portion of that statute, which controls here, provides that “the court in which the defendant was previously sentenced shall, upon dissolution of the stay, set a new date of execution ...” McKenzie was properly sentenced by Judge Nelson, a judge in the Eighth Judicial District Court. Judge McKittrick is a judge in the Eighth Judicial District Court, the “court in which the defendant was previously sentenced.” Accordingly, Judge McKittrick has the statutory authority under § 46-19-103(1) and (4), *39 MCA, without more, (as would any other district judge in that District) to perform the ministerial act of setting an execution date and signing the death warrant.
Moreover, we conclude that § 3-1-804, MCA, which controls the substitution of district court judges, is not applicable. Rather, § 46-19-103(1) and (4), MCA, governs, and it reposes the act of setting the execution date and signing the death warrant in the court in which the defendant was sentenced — here the Eighth Judicial District Court. Therefore, our order indicating the original presiding judge in Pondera County must appoint another district court judge before the court may set a new execution date is not controlling.
3. SUBSTANTIVE CLAIMS
McKenzie’s substantive claims are not properly before this Court on appeal. The District Court concluded that the hearing to reset the execution date was a procedural and ministerial act. The hearing was not a resentencing and Judge McKittrick had no jurisdiction to consider McKenzie’s substantive claims relating to the death penalty sentence itself. Likewise, those claims are not properly before this Court on appeal.
JUSTICES WEBER, GRAY, HUNT, DISTRICT JUDGE MIZNER sitting for CHIEF JUSTICE TURNAGE and DISTRICT JUDGE McLEAN sitting for JUSTICE TRIEWEILER concur.