COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and Russell
Argued by teleconference

UNPUBLISHED

CURTIS O'FERRELL SMALLS, II

v.        Record No. 0132-18-4

CURTIS O'FERRELL SMALLS, SR.
  AND SARAH LEE SMALLS                          MEMORANDUM OPINION* BY
                                                JUDGE ROBERT J. HUMPHREYS
CURTIS O'FERRELL SMALLS, II                      DECEMBER 4, 2018

v.        Record No. 0531-18-4

CURTIS O'FERRELL SMALLS, SR.
  AND SARAH LEE SMALLS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

John B. Jacob, Jr., for appellant.

Robert H. Klima for appellee.


Curtis O'Ferrell Smalls, II ("father"), appeals the January 11, 2018 final order of

adoption issued by the Circuit Court of Fairfax County ("circuit court"), arguing that the circuit

court erred by ruling that the circuit judge could fairly preside over the proceeding and need not

recuse himself and that the circuit court erred in applying Code § 63.2-1205, which father argues

is unconstitutional.  Father also separately appeals the March 16, 2018 circuit court decision

denying father's motion to stay the January 11, 2018 final order of adoption.[1]

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Because these appeals are related and involve the same parties, we have consolidated
them for oral argument and decision.

## I.  Background

On September 6, 2016, father's parents, Curtis Smalls, Sr. and Sarah Smalls ("grandparents"), petitioned the circuit court for the adoption of father's three children, E.S., R.S., and C.S.  Father is currently incarcerated and has been incarcerated a number of times since 1994 for writing bad checks.  As a result, his children have resided primarily with grandparents.

On January 8, 2018, a hearing was held regarding the adoption.  At this hearing, father was questioned by the circuit court regarding an emergency motion he filed, apparently against the wishes of his counsel.  Among other concerns, this emergency motion questioned the circuit court judge's ability to preside over the current petition, claiming that the judge was biased against father because he had presided over a criminal case several years preceding the hearing in which father was the defendant.  The circuit judge stated that he had no recollection of father's previous case until it was brought to his attention by the emergency motion and that he had no question that he could be fair and impartial in the present matter.  The circuit court thus denied father's emergency motion.

Two of father's three children testified at the hearing.  E.S. testified that she has no relationship with her father and that she favors the adoption.  Likewise, R.S. testified that he was angry with his father because of his incarceration and that he is in favor of the adoption.

During the hearing, father made a motion to strike the evidence on the grounds that the pertinent statute governing adoption, Code § 63.2-1205, does not account for the due process rights of the parent and is thus unconstitutional.  The circuit court denied this motion as well.  Father testified following the denial of this motion, describing his relationship with his children and his motivations for contesting the adoption.  Following father's testimony, the circuit court took the matter under advisement until January 11, 2018.

On January 11, 2018, the circuit court held that father's testimony was not credible and that he was exaggerating his degree of contact with his children. Further, the circuit court held that father's withholding of consent for the adoption was detrimental to the interests of the children and granted the adoption petition. Father appealed this decision to this Court.[2]

On March 2, 2018, father sought to stay the January 11, 2018 final order of adoption on the grounds that father had previously been granted visitation rights by the Fairfax County Juvenile and Domestic Relations District Court and wished to exercise those rights prior to the adoption. Grandparents argued, pursuant to Rule 1:1, that father's motion to stay should be denied because it was filed after the allotted twenty-one days following the final order of adoption. The circuit court denied father's motion, citing Rule 1:1 as well as the specific facts of the case, including the fact that father cannot exercise his visitation rights, as he is currently incarcerated, and the interests of the parties and children in finality. Father separately appealed this decision to this Court.[3]

## II. Analysis

The question of whether a judge should recuse himself is a discretionary action and is thus reviewed for an abuse of that discretion. See Terrell v. Commonwealth, 12 Va. App. 285, 293 (1991). "The essence of any discretionary determination is the exercise of judgment. Only when the record does not fairly support the circuit court's exercise of its judgment will we say that an abuse of discretion has occurred." Hawthorne v. VanMarter, 279 Va. 566, 577 (2010). "In reviewing an exercise of discretion, we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." Beck v. Commonwealth, 253 Va. 373, 385 (1997).

---

[2] Record No. 0132-18-4.

[3] Record No. 0531-18-4.

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352 (2011) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)).

Additionally, the question of bias on the part of a judge raises constitutional due process considerations, but these considerations mandate recusal "only where the judge has 'a direct, personal, substantial, pecuniary interest' in the outcome of a case." Welsh v. Commonwealth, 14 Va. App. 300, 314 (1992) (quoting Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972)). Matters of personal bias thus "would seem generally to be matters merely of legislative discretion." Id. (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986)). "In Virginia, whether a trial judge should recuse himself or herself is measured by whether he or she harbors 'such bias or prejudice as would deny the defendant a fair trial,' and is a matter left to the reasonable discretion of the trial court." Id. at 315 (quoting Justus v. Commonwealth, 222 Va. 667, 673 (1981)).

Father points to nothing in the record that would support a conclusion of such bias on the part of the circuit court judge, rather he simply argues that the circuit court erred in failing to recuse because it did not "conduct a thorough examination" of what occurred during the circuit court's previous criminal case involving father. Father cites no authority requiring such an analysis. Indeed, as the circuit court judge did not recall the previous criminal proceeding, the effect of any "thorough review" of the previous proceeding suggested by father is, ironically, the potential creation of exactly the possibility of the bias which father sought to prevent. Regardless, beyond his bare assertion that bias must have resulted from the circuit judge presiding over a prior case involving father, there is no evidence in the record before us

suggesting bias that would necessitate recusal under Virginia law, the Canons of Judicial Conduct, nor under the narrower constitutional test. Father's argument essentially is that he need only make such an assertion and the burden then shifts to the judge to rebut it through an evidentiary hearing. Aside from the obvious fact that it would be both absurd and logistically impractical to presume bias and require automatic recusal of a judge whenever a party appears in any subsequent proceeding before the same judge, it was father's burden as the moving party to present actual evidence supporting his argument of bias or prejudice on the part of the circuit judge such that he could not fairly decide the issues. In the absence of such evidence, the circuit court judge did not abuse his discretion in declining to recuse himself from this case.

Father's contention that the circuit court violated his Fourteenth Amendment due process rights by applying Code § 63.2-1205 requires a *de novo* review of the circuit court's judgment. See Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 401 (2012). Code § 63.2-1205 provides the process for determining, where a birth parent's required consent to an adoption is withheld, whether the withholding of such consent is contrary to the best interests of the child, and therefore unnecessary. Code § 63.2-1205 mandates that the court shall consider several factors in this assessment, including

> the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

Father argues that Code § 63.2-1205 is inherently unconstitutional because these factors do not include "proof of harm" in father's continuing his relationship with the children. This omission, according to father, ignores the fundamental rights of the parent, which he asserts must

be considered per Santosky v. Kramer, 455 U.S. 745 (1982). Father does not develop his "proof of harm" contention beyond this merely conclusory statement.

In addressing the constitutional validity of Code § 63.2-1205, our Supreme Court has noted that "best interests of the child" is a phrase more often used in custody determinations, requiring a "much more demanding" definition in the adoption context in light of the constitutional parental rights in question. See Copeland v. Todd, 282 Va. 183, 197 (2011), cert. denied, 132 S. Ct. 1918 (2012). Despite acknowledging this higher bar, our Supreme Court held that "the Virginia Code's adoption statutes meet constitutional due process scrutiny because they encompass far more than mere consideration of the child's best interests as defined in cases involving a contest between natural parents." Id. at 200. Father's brief argument, consisting of a single paragraph that does not address Copeland, amounts to an unsubstantiated assertion that Code § 63.2-1205 is unconstitutional.

Concerning the circuit court's denial of father's motion to stay the January 11, 2018 final order, Rule 1:1 mandates that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Father concedes that the twenty-one-day period provided in Rule 1:1 had elapsed, but contends that a stay does not modify, vacate or suspend the adoption order, and is therefore an action not contemplated by Rule 1:1.[4] Father derives this argument from Davidson v. Commonwealth, 246 Va. 168 (1993), a capital murder case, where our Supreme Court reversed a trial court's determination that it did not have jurisdiction to grant a stay of execution on a motion made outside the twenty-one-day window. Id. at 171. Our Supreme Court held that because a stay merely postpones when a

___

[4] Because we decide this issue based upon the application of Rule 1:1, we need not address the jurisdiction and authority of the circuit court to issue a stay of the final order while the case was on appeal to this Court.

judgment is executed, it does not modify, vacate, or suspend an order as contemplated under Rule 1:1. Id. Our Supreme Court based its decision in Davidson, at least partly, on the grounds that the order which set Davidson's execution date "was not a final order because it was not a disposition of the whole subject before the court in Davidson's case." Id. The entry of a final order of adoption, by contrast, "divest[s] [the birth parents] of all legal rights and obligations in respect to the child." Code § 63.2-1215. Such an order can only be characterized as a final order, one which "disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." Daniels v. Truck & Equip. Corp., 205 Va. 579, 585 (1964) (quoting March't & Taylor v. Mathews Co., 139 Va. 723, 734 (1924).

Adoption and capital punishment both represent unique situations where underlying moral concerns may counsel conflicting interpretations of finality. In the case of adoption, it is certain that finality is the ultimate aim of the proceeding, so as to avoid suspending children between claimants. This statutory desire for finality in adoption proceedings is evident in Code § 63.2-1216, which states that after six months have passed the validity of a final order of adoption cannot be attacked in any proceeding for any reason. Code § 63.2-1216 is not applicable here as father did appeal within the six-month window, but it serves to highlight the finality the General Assembly intends adoption proceedings to have.

Additionally, the circuit court did note that it had substantive reasons for denying the motion as well; namely the fact that father cannot exercise his visitation rights because he is currently incarcerated, and the interests of the parties in finality. At present, allowing father to exercise his visitation rights in person appears to be an impossibility. Father expects his incarceration to end in April 2019. The practical effect of granting his stay would have been to

leave the children in legal limbo for over a year, a prospect the circuit court quite reasonably

rejected. Father's desire to exercise his rights is thus doubly frustrated, by physical impossibility

imposed by his incarceration and the current desire of his children not to participate.

For the foregoing reasons, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>